# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KAREN K. KNIFFEN,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.

_____/

Case No. 1:21-cv-00703-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

Plaintiff Karen K. Kniffen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 13.)

## II.  BACKGROUND

Plaintiff protectively filed applications for DIB and SSI payments on August 23, 2017, alleging that she became disabled beginning on July 21, 2015,[3] due to herniated discs, diabetic neuropathy, feet ulcers, bad gait from a different left leg surgery, major depression, generalized anxiety disorder, attention-deficit/hyperactivity disorder ("ADHD"), insomnia, and stress. (Administrative Record ("AR") 42, 110, 114, 131, 146, 164, 293, 298.)  Plaintiff was born on August 28, 1958, and she was 58 years old on the date the application was filed.  (AR 293, 298.) She has at least a high school education and has past work experience as a substance abuse counselor.  (AR 48, 68–69, 115, 123, 140, 160, 178.)

### A.  Relevant Evidence of Record[4]

#### 1.  Medical Evidence

Plaintiff had previously been diagnosed with depression, generalized anxiety disorder, and ADHD.  (AR 1172, 1212, 1272.)  In April 2017, she established care at Clinica Sierra Vista and reported her symptoms as "moderate," yet occurring daily.  (AR 1210.)  Plaintiff further stated that she "has an extensive mental health history," including major depression, anxiety, and ADHD, for which she previously received psychiatric care.  (*Id.*)  She also reported that at the time, she had a podiatrist who had previously performed multiple foot surgeries and was treating her for a toe infection.  (*Id.*)

During examinations at Clinica Sierra Vista, Plaintiff continued reporting symptoms of depression and anxiety, and providers observed that she was tearful during examinations.  (AR 1210, 1212, 1218.)  Providers also noted Plaintiff's memory was normal, and though her mood and affect were inappropriate, she was oriented as to time, place, person, and situation, and her insight and judgment were normal.  (AR 1212, 1218.)

At a psychotherapy visit in September 2017, Plaintiff described having a difficult time, particularly when thinking about the way she was treated where she was last employed and the lawsuit she brought against her former employer.  (AR 1235.)  Plaintiff elaborated that she won the

---

[3] At the hearing, Plaintiff moved to amend the alleged onset date to February 3, 2016.  (AR 43, 78, 459.)

[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

lawsuit but "such a little amount of money" was "long gone." (*Id.*) Although Plaintiff reported no new issues, she stated that "without her meds she is 'a mess'" and requested a meeting with a psychiatrist. (*Id.*)

By early 2018, counselors noted that Plaintiff had made "'minimal'" progress, she reported not having taken Adderall for months, and her mental status findings were "routinely unremarkable." (AR 1357–58.) Plaintiff stated she felt better knowing she was receiving help and felt her doctors were validating her medical issues. (AR 1358–59.) Over the following few months, providers noted that Plaintiff's major depressive disorder had improved. (AR 1360, 1365, 1368.)

Throughout 2018 and 2019, Plaintiff's depression continued to improve, and she frequently reported good results from her medication regimen and that her mental symptoms did not interfere with her daily functioning. (AR 1368, 1486, 1498, 1502, 1546–47, 1557, 1575, 1868.) For example, during a visit in September 2019 with PMHNP Ann Thomas, Plaintiff stated that she was "'doing better than [she had] in a long time,'" taking Abilify had helped, and she felt a significant benefit from the overall treatment plan. (AR 1557, 1560.) PMHNP Thomas conducted a mental status examination and made the following findings: Plaintiff's thought process and progression were normal and without aberration; she exhibited good insight and judgment into and about mental problems; her higher cognitive functioning was generally in the normal range for reasoning; and her evaluation suggested no decline in areas of mental functioning such as attention, concentration, and memory. (AR 1559.) PMHNP Thomas further noted that no changes were needed as to Plaintiff's medications. (AR 1557, 1560.) At a visit with PMHNP Thomas in December 2019, Plaintiff reported continuing to do well on her medications and no other real concerns. (AR 1575.) PMHNP Thomas' mental examination at this visit revealed consistent and identical results with the last examination. (AR 1577.) By April 2020, providers noted that Plaintiff had unremarkable mental status findings, her anxiety had improved, she was compliant with appointments and benefitting from medications, doing better, and denied other health concerns. (AR 1929–30, 1942.)

On several occasions from 2017 to 2019, Plaintiff's providers reported that she scored around 45 and 50 in global assessments of functioning (GAF). (*See* AR 1172, 1233, 1360, 1369, 1494.) In April 2020, Dr. Jagdeep Garewal, M.D., determined that Plaintiff's GAF score was

3

between 61 and 70 and her symptoms were mild.  (AR 1831.)

## 2. Opinion Evidence

On March 5, 2018, Dr. Gil Schmidt, Psy.D., conducted a consultive mental health evaluation of Plaintiff.  (AR 1344.)  Plaintiff's chief complaints were that she "[c]annot work" and "[m]ental health issues."  (*Id*.)  She reported benefits as to her current medication regimen and indicated that the medications she was taking at the time appeared "to be most effective."  (AR 1345.)  Plaintiff further reported no psychiatric hospitalizations (AR 1345), but she did report a history of drug, alcohol, and tobacco use starting around the age of 20 (AR 1347).

As for activities of daily living, Dr. Schmidt noted that Plaintiff appeared capable of preparing and cooking her own meals, caring for her hygiene without prompts or assistance, and doing light and heavy-duty domestic chores without limitations.  (AR 1348.)  Plaintiff claimed a disturbed sleep pattern of insomnia when she does not take Ambien, but clarified that this disturbed sleep pattern occurs possibly once a year.  (*Id*.)  Pursuant to a mental status examination, Dr. Schmidt found that Plaintiff's long and short-term memory appeared intact, functional, and suggested at least a college level of understanding.  (AR 1349.)  As for Plaintiff's judgment and insight, Dr. Schmidt noted that Plaintiff's responses appeared average, but nevertheless revealed a narcissistic orientation.  (*Id*.)  Accordingly, Dr. Schmidt did not render a diagnosis for a primary DSM-5 psychiatric disorder, but rather a secondary diagnosis of unspecified personality features of histrionics and mild to moderate anxiety disorder.  (AR 1349–50.)

Dr. Schmidt determined that "[Plaintiff's] functional level appeared to be adequate with no significant mental health impairment," her "degree of mental health functioning appeared unremarkable at [the] time," and the nature of her health condition was "stable."  (AR 1350.)  Dr. Schmidt did not observe features of ADHD, as Plaintiff had reported, and he observed only mild symptoms that ultimately did not affect Plaintiff's functionality.  (*Id*.)  Dr. Schmidt also found that Plaintiff has no limitations in any of the four areas of mental functioning and determined she was capable of managing her own financial affairs.  (AR 1350–51.)  Dr. Schmidt concluded that "while [Plaintiff] reports many symptoms, her reporting of symptoms along with her clinical presentation appeared inconsistent."  (AR 1351.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on March 27, 2018, and again on reconsideration on June 14, 2018. (AR 42, 124, 141, 161, 179.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 25, 30, 42.)

On June 25, 2020, Plaintiff appeared telephonically with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 42, 79–99.) A vocational expert ("VE") also testified at the hearing. (AR 42, 100–07.)

**C.    The ALJ's Decision**

In a decision dated July 23, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 42–59.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (*Id.*) The ALJ decided Plaintiff met the insured status requirements of the Act through December 31, 2020, and she had not engaged in substantial gainful activity since February 3, 2016, the amended alleged onset date (step one). (AR 45.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lumbar spine, type 2 diabetes mellitus with neuropathy, and infections of skin disorder. (*Id.*) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 49.)

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your [RFC] . . . . We use this [RFC] assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined Plaintiff had the RFC:

> to perform light work as defined in 20 [§§] CFR 404.1567(b) and 416.967(b) except she can only stand and/or walk for two hours of an eight-hour workday with normal breaks and can sit with normal breaks six hours of an eight-hour workday. She can perform pushing or pulling motions with the upper extremities within the weight restrictions given however, bilateral pushing and pulling with the lower extremities is limited to no repetitive use of foot controls. She should avoid unprotected heights, moving machinery. She can perform postural activities occasionally of climbing ramps and stairs, balancing, crouching, kneeling and crawling. She should not climb ladders, ropes, or scaffolds on the job. She should avoid concentrated exposure to extreme heat and extreme cold.

5

(AR 50.)[5]  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 51.)

The ALJ found that Plaintiff is capable of performing past relevant work as a substance abuse counselor and sedentary exertion as generally performed, and this work does not require the performance of work-related activities precluded by her RFC (step four).  (AR 58.)  The ALJ concluded that Plaintiff was not disabled from February 3, 2016, through the date of the decision.  (AR 59.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 19, 2020.  (AR 19–24.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the [Act]."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

---

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [his or her] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his or her] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097. "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Substantial evidence is more than a mere scintilla but less than a preponderance.'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "'[t]he court will uphold the

ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). The Court must instead determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts may not reverse an ALJ's decision on account of an error that is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.  DISCUSSION

Plaintiff contends that the ALJ harmfully erred in finding at step two that her mental impairments were nonsevere, improperly relying on Dr. Schmidt's opinion as to her mental limitations, and determining that her GAF scores were unpersuasive. (*See* Doc. 18 at 12–18.) Defendant counters that the ALJ's step two determination, evaluation of Dr. Schmidt's opinion, and findings as to Plaintiff's GAF scores were proper. (*See* Doc. 20 at 5–14.) The Court disagrees with Plaintiff's allegations of error.

**A.  Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the

8

claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"'[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities.'" *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work

activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Yuckert*, 482 U.S. at 153–54). "Nonetheless, '[t]he plaintiff has the burden of establishing the severity of the impairment.'" *Jennings v. Kijakazi*, No. 1:20–cv–01180–SKO, 2022 WL 209239, at *8 (E.D. Cal. Jan. 24, 2022); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687).

**B.     The ALJ Did Not Err at Step Two**

    **1.     Evidence Considered by the ALJ**

As a part of the step two analysis, the ALJ noted that the record showed diagnoses for depression, anxiety, and ADHD, among other conditions (AR 45), but determined that these mental impairments, considered alone and in combination, "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere" (AR 46). In evaluating the severity of Plaintiff's mental impairments based on the record, the ALJ analyzed the impairments under each of the four functional areas that make up what are known as the "paragraph B" criteria and found that Plaintiff had mild limitations in all four areas. (AR 46–48.)

For example, the ALJ described how a few months after establishing care at Clinica Sierra Vista and reporting symptoms such as depression and anxiety, as well as appearing tearful during examinations (*see* AR 1210, 1212, 1218, 1323), by early 2018, counselors noted that Plaintiff had made "'minimal'" progress, she reported not having to take Adderall for months, and her mental status findings were "routinely unremarkable." (AR 46; *see also* AR 1357–58.) Despite not receiving specialty psychiatric care, Plaintiff reported no changes and that depression and anxiety did not interfere with daily functioning. (AR 46, 1229–30, 1358.) Throughout 2018 and 2019,

Plaintiff's depression improved, and she continued to report good results from her medication and that her mental symptoms did not interfere with her daily functioning. (AR 47; *see also* AR 1368, 1486, 1498, 1502, 1546–47, 1557, 1575, 1868.) In April 2020, several providers noted that Plaintiff had unremarkable mental status findings, was compliant with appointments and benefitting from medications, doing better, and denied other health concerns. (AR 47–48, 1929, 1937, 1942.)

During a consultive psychological examination, Dr. Schmidt noted that Plaintiff appeared capable of caring for herself, cooking, and an ability to do both light and heavy-duty domestic chores. (AR 47, 1348.) Dr. Schmidt found that many of Plaintiff's mental faculties were intact, including her long and short-term memory, concentration, and abstract thinking. (AR 48, 1348–49.) Dr. Schmidt opined that Plaintiff's judgment and insight were also intact, but noted that they were somewhat of a narcissistic orientation. (AR 48, 1349.) Accordingly, Dr. Schmidt did not render a diagnosis for a primary DSM-5 psychiatric disorder, but rather a secondary diagnosis of unspecified personality features of histrionics and mild to moderate anxiety disorder. (AR 48, 1349–50.) Dr. Schmidt did not observe features of ADHD, as Plaintiff had reported, and he observed only mild symptoms that did not affect Plaintiff's functionality. (AR 48, 1350.) Finally, Dr. Schmidt found that Plaintiff had no limitations in any of the four areas of mental functioning and determined she was capable of managing her own financial affairs. (AR 48, 1350–51.)

The ALJ also emphasized that the record showed no history of psychiatric hospitalizations. (AR 48.) Lastly, the ALJ noted that the various providers' opinions rendering Plaintiff's GAF scores were not persuasive, reasoning that "GAF scores are one-time assessments and speak little to [Plaintiff's] overall functioning over time," and "they are vague and provide little insight into [Plaintiff's] exact limitations." (AR 58.)

**2.    Reliance on the Opinion of Dr. Schmidt**

a.    <u>Medical Opinion Evidence Generally</u>

Plaintiff's claims for benefits are governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, ALJs must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)); *see also id.* § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose

of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors[.]

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*.; *see also* 20 C.F.R. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Woods*, 32 F.4th at 792. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these principles in mind, the Court reviews the weight given to Dr. Schmidt's opinion.

      b.      <u>Analysis</u>

The ALJ reiterated that because Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities, they are nonsevere." (AR 49 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)) (original emphasis); *see also* AR 48 (ALJ found that the overall record supported her conclusion that Plaintiff had "no more than mild limitations in each of the four areas of mental functioning as described above.").) Specifically, in weighing Dr. Schmidt's opinion related to Plaintiff's mental functioning, the ALJ found that based on the evidence cited above, Dr. Schmidt's opinion was "persuasive and consistent with the overall record of normal mental status findings and conservative history of treatment." (AR 48.)

The Court finds that the ALJ properly evaluated the supportability and consistency of Dr. Schmidt's opinion. First, the ALJ invoked the supportability factor by describing how Dr. Schmidt opined that, based on his evaluation of Plaintiff, he did not observe features of ADHD as Plaintiff had described, nor did he render a diagnosis for a primary DSM-5 psychiatric disorder, but instead, a secondary diagnosis of unspecified personality features of histrionics and mild to moderate anxiety disorder. (AR 48, 1349–50.) The ALJ also noted that after finding that most Plaintiff's

mental faculties were intact, Dr. Schmidt observed only mild symptoms that did not affect Plaintiff's functionality, and he determined that Plaintiff had no limitations in any of the four areas of mental functioning. (AR 48, 1348–51.) Despite finding Dr. Schmidt's opinion persuasive, the ALJ nonetheless concluded that Plaintiff's mental limitations as to the four areas of mental functioning were mild. (AR 48.)

Second, the ALJ determined that Dr. Schmidt's opinion was consistent "with the overall record of normal mental status findings and conservative history of treatment." (AR 48.) As cited by the ALJ and detailed above, on multiple instances ranging from September 2017 to April 2020, providers noted that Plaintiff's mental status findings were unremarkable. (AR 46–48; *see also* AR 1235, 1357–58, 1929, 1937, 1942.) Over the next two years, Plaintiff repeatedly reported good results from her medications and that her mental symptoms did not interfere with her daily functioning. (AR 47–48; *see also* AR 1368, 1486, 1498, 1502, 1546–47, 1557, 1575, 1868, 1929, 1937, 1942.) And, the record showed no history of psychiatric hospitalizations. (AR 48; *see also* AR 1345 (Dr. Schmidt noted that no psychiatric hospitalizations were reported).)

Based on the foregoing objective medical evidence and opinion evidence, the ALJ's finding that Dr. Schmidt's opinion was consistent with the longitudinal record as a whole is legally sufficient and supported by substantial evidence. *See, e.g., Deacon v. Kijakazi*, No. 1:21-cv-00641-BAM, 2022 WL 17363228, *10–11 (E.D. Cal. Dec. 1, 2022); *Sutton v. Kijakazi*, No. 1:21-cv-01097-SKO, 2022 WL 4110304, at *9 (E.D. Cal. Sept. 7, 2022). It was therefore reasonable for the ALJ to conclude that the record supported the conclusion that Plaintiff had only mild limitations in all four areas of mental functioning and that her mental impairments, considered alone and in combination, "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." (AR 46, 48.) *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

**3.   GAF Scores**

Plaintiff also contends that the ALJ erred by failing to consider her GAF scores that indicated serious to moderate mental impairments. (*See* Doc. 18 at 15–18.) As Defendant correctly

asserts (*see* Doc. 20 at 11–13), the ALJ is not required to afford controlling weight to GAF scores. *See Nelson v. Comm'r Soc. Sec.*, No. 1:19-cv-01387-SAB, 2020 WL 5909061, *22 (E.D. Cal. Oct. 6, 2020). The Ninth Circuit held in an unpublished opinion that it is not legal error to fail to consider the GAF score where, as here and discussed below, the RFC takes into account the claimant's mental impairments. *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008). Moreover, the Ninth Circuit recognized that "'[t]he Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings."'" *Doney v. Astrue*, 485 Fed. Appx. 163, 165 (9th Cir. 2012) (citing *McFarland*, 288 Fed. Appx. at 359). Accordingly, the Court concludes that it was not error for the ALJ to find Plaintiff's GAF scores unpersuasive.

**C.     The ALJ's Formulation of Plaintiff's Mental RFC Was Not Erroneous**

An ALJ must consider the limiting effect of all impairments, including those that are non-severe, in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). "However, an ALJ is not required to include limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work." *Kendall v. Saul*, No. 1:19-cv-01485-SKO, 2021 WL 736268, at *13 (E.D. Cal. Feb. 25, 2021). "So long as the ALJ 'actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error.'" *Id.* (citing *McIntosh v. Berryhill*, No. EDCV 17-1654-AGR, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) (because the ALJ concluded that mental impairment was nonsevere and caused no more than minimal restrictions, there was no requirement to include it in the claimant's RFC)).

Here, at step two, the ALJ found that Plaintiff's mental impairments caused no more than mild limitations as to Plaintiff's mental functioning. (AR 46, 48.) Therefore, in conformity with 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1), the ALJ determined that Plaintiff's mental impairments were nonsevere. (AR 49.) The record also reflects that the ALJ considered all of the evidence related to Plaintiff's mental impairments at step four before deciding that inclusion of limitations based on those impairments in the RFC was not warranted. In particular, the ALJ

considered the medical opinion evidence, objective medical evidence in the record, and Plaintiff's reports as to her limitations due to her mental health issues, such as her inability to work and ongoing difficulties with remembering and concentrating. (AR 50–51.) The ALJ thus did not err in omitting mental limitations in Plaintiff's RFC.

### D.     Even Assuming *Arguendo* the ALJ Did Err, Such Error was Harmless

Even had the ALJ erred by failing to conclude that Plaintiff had severe mental impairments, such error was, at most, harmless. (*See* Doc. 20 at 6.) A claimant is prejudiced at step two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor. *See, e.g., Burch*, 400 F.3d at 682 ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."); *Hickman v. Comm'r Soc. Sec. Admin.*, 399 Fed. Appx. 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor."). Additionally, the failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from said impairment in subsequent steps. *See Lewis*, 498 F.3d at 911 (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four).

At step two, the ALJ determined that Plaintiff's severe impairments included degenerative disc disease of the lumbar spine, type 2 diabetes mellitus with neuropathy, and infections of skin disorder. (AR 45.) The ALJ then proceeded to the step three analysis. (*See* AR 49.) Therefore, because Plaintiff's claims were not screened out at this step, she was not prejudiced by any error in the step two analysis. *See Wilson v. Kijakazi*, No. 1:20-cv-01753-SKO, 2022 WL 3908428, at *12 (E.D. Cal. Aug. 30, 2022). The ALJ further stated in RFC findings that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (AR 50; *see, e.g., Sara Ann W. v. Comm'r*

*of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("the ALJ specifically noted that she considered *all symptoms* in assessing the [RFC] . . . Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.") (original italics).)

In sum, the Court concludes that the ALJ properly weighed the medical evidence and did not harmfully err in her assessment of Plaintiff's RFC. *See Wilson*, 2022 WL 3908428, at *2; *Kendall*, 2021 WL 736268, at *13–14.

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **January 20, 2023**            /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE